**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTHFIELD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TILTED TURTLE ENTERTAINMENT, LLC, et al.,<br><br>Defendants. | CASE NO. 1:19-cv-01583-AWI-SKO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 28) |

**INTRODUCTION**

Plaintiff Northfield Insurance Company ("Northfield") filed this action on November 5, 2019 seeking rescission and declaratory relief in connection with insurance coverage for a bar and grill owned and operated by Tilted Turtle Entertainment LLC ("Tilted Turtle") and Marianne Magana ("Defendants"). Doc. No. 1. Through this motion, Northfield seeks summary judgment—or partial summary judgment—on the four causes of action set forth in the Second Amended Complaint ("2AC"), which is the operative pleading in this action. The motion was deemed suitable for decision without oral argument pursuant to Local Rule 230(g) and taken under submission on January 7, 2021. Doc. No. 31. For the reasons set forth below, the motion will be granted in part and denied in part.

## **RELEVANT BACKGROUND**[1]

In January 2019, Defendant Tilted Turtle applied for a commercial insurance policy for the Titled Turtle Bar and Grill (the "Bar and Grill") from Northfield. Doc. No. 29-1 (Undisputed Fact ("UF") No. 1). The application was submitted by Tilted Turtle's insurance agent, Johnny Garcia of the Garcia Insurance Agency, to Scottish American Insurance General Agency, Inc. ("Scottish American"), an agent authorized to underwrite and reinstate insurance policies on Northfield's behalf. Id. (UF Nos. 1-2). After Scottish American bound coverage, Northfield issued Commercial Insurance Policy No. WS379737 for the Bar and Grill to Tilted Turtle for the period from January 24, 2019 to January 24, 2020 (the "Policy"). Id. (UF No. 5).

The premium for the Policy was financed through a lender, Pacific Coast Premium Finance Corp. ("Pacific Coast"). Doc. No. 29-1 (UF No. 7.) The financing agreement between Pacific Coast and Tilted Turtle (the "Financing Agreement") stated that Pacific Coast had power of attorney with respect to the Policy and could cancel the Policy on Tilted Turtle's behalf if Tilted Turtle missed an installment payment for the premium due under the Financing Agreement. Id. (UF No. 8); Doc. No. 28-16 at 2.[2]

Tilted Turtle missed an installment payment in March 2019 and on April 15, 2019, Pacific Coast sent a Notice of Cancellation to Northfield, Scottish American, Tilted Turtle and the Garcia Insurance Agency stating that the Policy was cancelled effective April 15, 2019. Doc. No. 29-1 (UF Nos. 9-11); Doc. No. 28-10.

Magana is the current owner of the Bar and Grill.[3] Doc. No. 29-1 (UF No. 3). On April 21, 2019, Magana witnessed a shooting at the Bar and Grill in which two people were injured. Id. (UF Nos. 15-16, 18-22). Magana realized there was a possibility she could be sued in connection with

---

[1] This section is based primarily on the Joint Statement of Undisputed Facts agreed to by the Parties and filed in support of Defendants' opposition to the instant motion. See Doc. No. 29-1. Documents relating to insurance coverage for the Bar and Grill are also cited in some instances.

[2] Page citations for documents filed electronically with the Court are to page numbers in the CM/ECF stamp at the top of each page.

[3] Tilted Turtle Entertainment LLC owned the Bar and Grill at the time the Policy was issued, but ownership later passed to Magana as an individual because Magana did not renew Titled Turtle Entertainment LLC. Id. (UF 4). The fact that Magana succeed Tilted Turtle Entertainment LCC as the owner of the Bar and Grill does not affect the instant motion.

2

the shooting, and thus contacted an attorney for legal advice and Garcia for information regarding insurance coverage for the Bar and Grill. Id. (UF Nos. 25-27). Magana did not tell Garcia about the shooting, but Garcia told Magana that a payment was required to maintain insurance for the Bar and Grill with Northfield. Id. (UF Nos. 27-29).

In addition, Scottish American required Magana to execute a Statement of No Loss to reinstate coverage. Doc. No. 29-1 (UF No. 29). Magana executed a Statement of No Loss on April 24, 2019, certifying that she was not aware of any losses, accidents or circumstances that might give rise to a claim under the Policy, "FROM 12:01 AM ON 4-15-19 TO 4-24-19." Id. (UF No. 31). Garcia sent an executed copy of the Statement of No Loss to Scottish American the same day Id. (UF No. 32).

Pacific Coast sent a Reinstatement Request to Northfield and Scottish American requesting reinstatement of coverage on April 25, 2019, and Scottish American agreed to reinstate coverage on Northfield's behalf. Doc. No. 29-1 (UF No. 36-37).

On November 20, 2019, the two people injured in the April 21, 2019 shooting at the Bar filed an action, *Miranda, et al. v. Tilted Turtle*, Case No. CV-19-006990, against Tilted Turtle in Stanislaus County Court for negligence and premises liability (the "State Court Action"). Doc. Nos. 28-4, 28-5; see also, Doc. No. 29-1 (UF No. 18).[4]

Northfield filed this action on November 5, 2019. Doc. No. 1. The 2AC, which was filed on April 17, 2020 and remains the operative pleading, adds the plaintiffs in the State Court Action as defendants[5] and seeks rescission of the Policy (First Cause of Action), Doc. No. 19 at 7:22-8:26, as well as various other forms of relief (First, Second and Third Causes of Action), including declarations that Northfield is not obligated to defend or indemnify Defendants in connection with the shooting. Id. at 5:15-7:21. The instant motion seeks judgment as to each of the four causes of

---

[4] Northfield requests judicial notice for the fact and contents of the Complaint and First Amended Complaint in the State Court Action. The request is GRANTED. See Fed. R. Civ. P. 201; Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings in other actions to determine "what issues were actually litigated"); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of pleadings in a state court action).
[5] The plaintiffs in the State Court Action have been dismissed from this case without prejudice. Doc. No. 21.

3

action set forth in the 2AC,[6] Doc. No. 28, and the plaintiffs in the State Court Action have agreed to be bound by any judgment in this case. Doc. No. 29-1 ¶ 50; Doc. Nos. 20, 21.

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed .R. Civ. P. 56(a); see Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004). The moving party bears the burden of establishing the absence of a genuine issue of material fact, generally by "citing to particular parts of materials in the record" such as depositions, interrogatory answers, declarations, and documents. Fed. R. Civ. P. 56(c); see also, Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)). If the moving party does not meet this burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

If the moving party meets its initial burden of production, the burden then shifts to the opposing party to show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–89 (1968)) (internal quotation marks omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of material fact after the burden

---

[6] The 2AC alleges that, while applying for the Policy in January 2019, Defendants submitted an Application Supplement falsely stating that Tilted Turtle did not provide "hazardous entertainment" in the vein of wrestling or mechanical bulls. Doc. No. 19 ¶¶ 7-8. According to the 2AC, the falsity of the Application Supplement combined with the falsity of the Statement of No Loss provides grounds for rescinding the entire Policy *ab initio*. Doc. No. 19 ¶ 33. There is, however, no argument or development of facts relating to the Application Supplement or "hazardous entertainment" in Northfield's motion for summary judgment. Doc. Nos. 28, 28-1. Therefore, neither the Application Supplement nor its implications as to rescission of the Policy are addressed in this order.

4

has shifted, the moving party is entitled to summary judgment. Fritz, 210 F.3d at 1103. In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587 (citing Cities Service, 391 U.S. at 289).

## ANALYSIS

For the reasons set forth below, the Court will order rescission as to insurance coverage for the Bar and Grill and deny summary judgment as to Northfield's other causes of action as moot.

**I.      Rescission of Insurance Coverage**

     **A.      Applicable Law**

The California Insurance Code requires that "[e]ach party to a contract of insurance communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract …." Cal. Ins. Code § 332. "Concealment," which the California Insurance Code defines as "[n]eglect to communicate that which a party knows, and ought to communicate," id. § 330, "entitles the injured party to rescind insurance." Id. § 331. Similarly, "[i]f a representation is false in a material point, … the injured party is entitled to rescind [an insurance] contract from the time the representation becomes false." Id. § 359.

In other words, California law "permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance." TIG, Ins. Co. of Mich. v. Homestore, Inc., 137 Cal. App. 4th 749, 755-56 (2006); L.A. Sound USA, Inc. v. St. Paul Fire & Marine Insurance Company, 156 Cal. App. 4th 1259, 1266 (2007) ("When a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy."). Rescission "effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable." Atmel Corp. v. St. Paul Fire & Marine, 426 F. Supp. 2d 1039, 1044 (N.D. Cal. 2005); see also, Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal. App. 3d 169, 182 (1988). Further, "[t]he consequence of rescission is not only termination of liability, but also restoration of the parties to their former positions by requiring each to return whatever consideration has been received." Sogomonian, 198 Cal. App. 3d at 184 (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987)

5

Contracts, § 869, p. 781).

**B.     Discussion**

        *1.     Northfield's Right to Rescission*

The following series of events is undisputed: Pacific Coast provided Tilted Turtle a loan for the Policy premium, pursuant to the Financing Agreement. Doc. No. 29-1 (UF No. 7). The Financing Agreement states that Pacific Coast had the right to cancel the Policy on Tilted Turtle's behalf if Tilted Turtle missed an installment payment to Pacific Coast under the Financing Agreement. Id. (UF No. 8). Tilted Turtle missed an installment payment in March 2019, and on April 15, 2019, Pacific Coast mailed a Notice of Cancellation for the Policy to Northfield, Scottish American, Tilted Turtle and the Garcia Insurance Agency with an effective date of April 15, 2019. Id. (UF Nos. 9-11); Doc. No. 28-10. On April 21, 2019, Magana witnessed a shooting at the Bar that resulted in injury to two people. Id. (UF Nos. 20-22). Magana contacted Garcia, as well as an attorney, because she was concerned about potential liability in connection with the shooting. Id. (UF Nos. 25-26). Scottish American required Magana to execute a Statement of No Loss in order to reinstate coverage. Id. (UF No. 29). Magana executed and submitted a Statement of No Loss on April 24, 2019, certifying that she was not aware of any losses, accidents or circumstances that might give rise to a claim under the Policy from April 15, 2019 to April 24, 2019, id. (UF No. 31-32); Doc. No. 28-11, and on April 25, 2019, Scottish American reinstated coverage on Northfield's behalf, including coverage for the period from April 15, 2019 through April 24, 2019. Id. (UF Nos. 35-37); Doc. No. 28-6 ¶ 7.

Northfield contends that these facts entitle it to rescission because the Statement of No Loss was false, Doc. No. 28-1, Part V.A.1., but Defendants argue that Northfield waived any right to rescission because it was aware—or should have been aware—of the shooting at the time Magana executed the Statement of No Loss. Doc. No. 29 at 10:14-14:1.

Section 336 of the California Insurance Code provides:

> The right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated.

Cal. Ins. Code § 336. Further, Defendants are correct that courts seeking to prevent opportunistic

6

rescission on the part of insurers have found that an insurer can have a "duty of further inquiry" when it has "before it information that plainly indicates that the insured's statements are not true." Star Ins. Co. v. Sunwest Metals, Inc., 691 F. App'x 358, 360–61 (9th Cir. 2017) (quoting Rutherford v. Prudential Ins. Co. of Am., 234 Cal. App. 2d 719, 733–34 (1965)) (internal quotations and brackets omitted).

      Magana testified in deposition that Garcia was "aware" of the shooting because "[i]t was all over the news." Doc. No. 29 at 12:12. She also testified that she "believe[d]" Garcia "heard about [the shooting] in the news"; that she was "pretty sure" he had "read about" the shooting in local papers; and that he had told her that "he had got contacted from a couple people." Id. at 12:9-23. This testimony is of no consequence, however, for three reasons. First, Garcia was Tilted Turtle's agent, not Northfield's agent, and Defendants provide no reason why Garcia's knowledge should be imputed to Northfield. See LA Sound, 156 Cal. App. 4th at 1268 ("As a matter of law, if an insurance application was prepared by an insurance broker (the agent of the insured), the application's contents are the *insured's* responsibility." (citation, internal quotation marks and brackets omitted; emphasis in original)). Second, Magana's testimony that Garcia gleaned knowledge of the shooting from the media or word-of-mouth is speculative and equivocal. And third, Magana expressly admits in her testimony that she did not know when Garcia came to learn of the shootings. Doc. No. 29 at 12:17-18. Similarly, the fact that the Reinstatement Request form used by Scottish American references a "possibility" that reinstatement would not be granted is irrelevant because that is clearly a boilerplate disclaimer that cannot be read to evidence knowledge of anything, let alone the April 21, 2019 shooting. See Doc. No. 29 at 13:1-4; Doc. 28-12 at 2.

      In short, Defendants have failed to set forth evidence showing that Northfield was on notice of the shooting, and the Court therefore finds that Northfield did not waive any right to rescission on that basis. See Mitchell v. United Nat'l Ins. Co., 127 Cal. App. 4th 457, 476 (2005) ("An insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations." (quoting Lunardi v. Great–West Life Assurance Co., 37 Cal. App. 4th 807, 824 (1995) (internal quotation marks omitted)).

Defendants further argue that the mere fact that the Statement of No Loss was false is not sufficient for rescission and that Northfield must show—through the "specific testimony of an underwriter" or some similar means—that it "would not have issued or renewed [a] policy if the insured had provided truthful information."[7] Doc. No. 29 at 11:2-6. This argument fails for two reasons. First, Scottish American's underwriter provided an unrefuted declaration expressly stating that she relied on the Statement of No Loss in approving reinstatement and that reinstatement would not have been granted without it. Doc. No. 28-6 ¶ 7. Second, the Court does not entirely agree with Defendants' characterization of applicable law. Courts have found that materiality determinations are subjective in an insurance context in the sense that "the critical question is the effect truthful answers would have had on [the insurer in question], not on some 'average reasonable' insurer," Mitchell, 127 Cal. App. 4th at 469 (citation and internal quotation marks omitted), but ultimately, "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code § 334; see also, Mitchell, 127 Cal. App. 4th at 468. As a general rule, an insurer is entitled "rely upon [the insured] ... for such information as it desires" in determining whether to provide coverage, Old Line Life Ins. Co. v. Superior Court, 229 Cal. App. 3d 1600, 1604 (1991) (citation and internal quotation marks omitted), and the mere fact "that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." L.A. Sound, 156 Cal. App. 4th at 1268-69 (citation and internal quotation marks omitted); Sogomonian, 198 Cal. App. 3d at 179. Here, all the boxes are checked: the insurer specifically sought confirmation that no events potentially giving rise to claims occurred from April 15, 2019 through April 24, 2019; the underwriter for Northfield's agent, Scottish American, testified that she would not have reinstated coverage

---

[7] In addition, Defendants assert without elaboration that rescission is not warranted because Magana's misrepresentation was unintentional. Doc. No. 29 at 5:8. That is hard to believe in light of the magnitude of the event in question, the fact that Magana consulted with an attorney and the timing of Magana's efforts to have coverage reinstated. In any event, whether the misrepresentation was intentional or unintentional is irrelevant to determining whether Northfield is entitled to rescission. See Mitchell, 127 Cal. App. 4th at 473.

8

without the Statement of No Loss; and it is beyond cavil that a shooting that resulted in injury to two people would have a significant impact on an insurer's "estimate of the disadvantages" of retroactively providing coverage for the period in which the shooting took place. The Court therefore finds that Magana's false representation that no events giving rise to potential insurance claims occurred from April 15, 2019 through April 24, 2019 was material and that Northfield is entitled to rescission based on the Statement of No Loss. See TIG, 137 Cal. App. 4th at 755-56.

   *2.   Scope of Rescission*

The Court does not agree, however, that rescission applies to the Policy, as Northfield essentially assumes. See Doc. No. 28-1, Part V.A.1. Under California law, cancellation of an insurance policy by an *insurer* for missed premiums can result in a period of lapse or suspension during which the insured has a contractual right to reinstate the policy (by paying late premiums and such) without forming a new insurance contract distinct from the original policy. See Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 630–31 (1941) (rejecting idea that "an application for reinstatement of a lapsed policy constitutes an offer to enter into a new contract" and finding that "reinstatement ... does not involve the formation of a new contract"); N. Am. Co. for Life & Health Ins. v. Rypins, 29 F. Supp. 2d 619, 622–23 (N.D. Cal. 1998).

   An *insured*, however, can generally terminate an insurance policy with immediate effect, "subject only to his unilateral communication of his desire to cancel." See Coe v. Farmers New World Life Ins. Co., 209 Cal. App. 3d 600, 607 (1989) ("The right to terminate the contract at any time on request constituted a continuing offer by the company which, when accepted by the insured by exercising the right conformable to the terms of the policy, immediately revoked the contract without any further action on the part of anyone." (quoting DeLaPerriere v. American Home Assurance Ins. Co., 106 Ga. Ct. App. 516 (1962)). Further, California law provides that a lender who has provided funds for payment of an insurance premium may exercise an insured's power of cancellation when authorized to do so by the insured through a signed writing. Cal. Ins. Code § 673, subd. (a). Instructions from a duly authorized lender to "cancel are conclusive for all purposes with respect to the insurer" and "once [the lender] has instructed the insurer to cancel, the cancellation is effective." Pac. Auto. Ins. Co. v. Wolff, 72 Cal. App. 3d 537, 540–41 (1977)

1  (citing Cal. Ins. Code § 673, subd. (a), (i)); see also, Pac. Bus. Connections, Inc. v. St. Paul
2  Surplus Lines Ins. Co., 150 Cal. App. 4th 517, 522 (2007). Cancellation constitutes "*prospective* []
3  termination" of insurance coverage. See Sogomonian, 198 Cal. App. 3d at 182 (citing Barrera v.
4  State Farm Mut. Automobile Ins. Co., 71 Cal.2d 659, 663–664, fn. 3 (1969) (emphasis original));
5  see also, State Farm Mut. Auto. Ins. Co. v. Pederson, 185 Va. 941, 949-50 (1947) ("where a notice
6  to cancel a policy is given in accordance with its terms, the contract is *ipso facto* terminated"
7  (collecting authorities)).

8       In this case, Pacific Coast provided financing for the Policy premium and Tilted Turtle
9  gave Pacific Coast written authorization to cancel the Policy if Tilted Turtle missed an installment
10 payment under the Financing Agreement. Doc. No. 28-2 (UF Nos. 7, 8). Tilted Turtle missed an
11 installment payment and Pacific Coast issued a Notice of Cancellation with a cancellation date of
12 April 15, 2019.[8] Doc. No. 28-6 ¶¶ 6-7; Doc. No. 28-10 at 2. Consequently, the Policy was no
13 longer in effect when Magana secured reinstatement of coverage by falsely certifying the
14 Statement of No Loss. See Pac. Bus. Connections, Inc., 150 Cal. App. 4th at 524 ("Cancellation
15 shall be effective on the financed insurance policy ... on the confirmation date specified in the
16 written exercise of that right." (citing Cal. Ins. Code § 673, subd. (e)). Thus, the reinstatement can
17 only be seen as a contract separate from the Policy and subject to rescission in its own right. The
18 Court therefore finds Northfield is entitled to rescission of the reinstatement—not to rescission of
19 the Policy—based on the Statement of No Loss.[9]

---

[8] One troubling aspect of the record for this motion is that the Court sees no evidence that Pacific Coast provided Defendants with notice or an opportunity to cure prior to cancellation of the Policy on April 15, 2019. Section 673 of the California Insurance Code requires providers of premium financing to give insureds at least five-day notice (and as much as ten-day notice) before effecting cancellation. Cal. Ins. Code § 673, subd. (c), (d). The April 15, 2019 Notice of Cancellation was not mailed until the effective date of the cancellation (April 15, 2019), Doc. No. 28-10, and the Court sees no documents in the record providing Defendants with advance notice of cancellation. It may be that the requisite notice was provided and omitted from the record. Regardless, any claim Defendants may have under Section 673 relating to notice (or lack thereof) would be against Pacific Coast, not Northfield, and lack of notice to Defendants would not change the fact that the Policy was terminated effective April 15, 2019 through Pacific Coast's unilateral action. See Holland v. Sterling Casualty Ins. Co., 25 Cal. App. 4th 1059, 1063-64 (1994); see also, Pac. Bus. Connections, 150 Cal. App. 4th at 523; Gorham Co., Inc. v. First Financial Ins. Co., 139 Cal. App. 4th 1532, 1542 (2006).

[9] Even assuming reinstatement merely restored the Policy (as opposed to forming a new contract), the Court has found no cases voiding an insurance policy *ab initio* based solely on a misrepresentation that occurred in connection with reinstatement. See Rypins, 29 F. Supp. 2d at 623 (finding misrepresentation in connection with reinstatement gave rise

10

## II. Duty to Defend and Duty to Indemnify

In addition to rescission, Northfield seeks declarations that it has no duty to defend and no duty to indemnify Defendants in connection with claims arising from the shooting because of the assault or battery exclusion in the Policy. Doc. No. 28-1 at 17:12-22:12; Doc. No. 19 at 5:15-6:19 (First and Second Causes of Action). Rescission, however, renders an insurance contract "totally unenforceable from the outset, such that there never was any coverage …." Atmel, 426 F. Supp. 2d at 1044; see also, Sogomonian, 198 Cal. App. 3d at 182 ("a rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable"). The April 21, 2019 shooting took place after the Policy was terminated and during the period of time covered by the reinstatement. Since this order will rescind the reinstatement, it necessarily follows that Northfield has no duties in connection with the shooting under the Policy or the reinstatement. See Infinity Ins. Co. v. Sevilla Guerrero, 2007 WL 2288324, at *5 (E.D. Cal. Aug. 8, 2007) (finding that insurer had no duty to defend and no duty to indemnify under rescinded policy). Summary judgment as to Northfield's First and Second Causes of Action will therefore be denied as moot.

## **CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in Northfield's favor on the Fourth Cause of Action and order rescission of the reinstatement from its effective date, April 15, 2019. Consistent with that ruling, the reinstatement is totally unenforceable, and Northfield has no duty under the reinstatement (or the Policy) to defend, indemnify or otherwise provide benefits to Defendants in connection with claims arising from the April 21, 2019 shooting. Further, to effect rescission, the parties are required to reverse whatever exchange of benefits occurred

---

to a claim for fraud in procurement of a contractual right but that it did not void insurance policy *ab initio*). The Court has found instances in which a policy has been voided *ab initio* based, in part, on a misrepresentation made in connection with reinstatement, but only where a misrepresentation was also made in connection with the initial application for the policy. See, e.g., Kent v. Minnesota Mut. Life Ins. Co., 2001 WL 1354251, at *2 (Cal. Ct. App. Nov. 5, 2001). As noted *supra* at n.6, the 2AC alleges misrepresentations relating to "hazardous entertainment" in the Application Supplement for the Policy, but there are no facts or argument regarding the Application Supplement in the motion for summary judgment. Thus, the Court sees no rationale for rescission prior to April 15, 2019, as the date the reinstatement took effect. See Cal. Ins. Code § 359 (providing for rescission "from the time [a] representation becomes false").

11

between them pursuant to the reinstatement. <u>Sogomonian</u>, 198 Cal. App. 3d at 184. Thus, for example, Northfield must return any premiums collected for reinstatement with interest, while Defendants must provide restitution, with interest, for any expenditures Northfield made for Defendants' benefit pursuant to the reinstatement (including payments for defense or indemnification in connection with the State Court Action). <u>Id.</u>; <u>see</u> <u>also</u>, <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal.4th 643, 662 (2005). The order of rescission moots the First and Second Causes of Action since Northfield can have no duties under a contract that, in the eyes of the law, never existed and also moots the Third Cause of Action for equitable relief based on misrepresentation or concealment, which is largely duplicative of the Fourth Cause of Action and otherwise seeks relief not available after rescission. <u>See</u> Doc. No. 19 at 6:20-21.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 28) is GRANTED as to the Fourth Cause of Action for rescission and DENIED as moot as to the First, Second and Third Causes of Action;

2. Northfield's Commercial Insurance Policy No. WS379737 terminated effective April 15, 2019;

3. The reinstatement is rescinded and void *ab initio* (April 15, 2019);

4. Rescission of the reinstatement shall restore the *status quo ante* between Northfield and Defendants such that:

    a. Northfield shall provide restitution in an amount equal to all premiums collected for the reinstatement, plus interest;

    b. Northfield is entitled to restitution in an amount equal to expenditures made by Northfield in providing defense, indemnification or other forms of insurance coverage for the benefit of Defendants in connection with the shooting, plus interest;

5. All pending dates, including the date for the pretrial conference and the trial date, are VACATED; and

6. The Clerk is DIRECTED to enter judgment for Plaintiff and close this case.

IT IS SO ORDERED.

Dated:   March 18, 2021                                     _____
                                                                              SENIOR  DISTRICT  JUDGE